## TALBOT v. MASON.

(Circuit Court of Appeals, Sixth Circuit. July 21, 1903.)

No. 1,176.

**1. APPEAL—ESTOPPEL—ACCEPTANCE OF CONSENT ORDER.**
A claimant who, on the entry of an order denying his petition for an allowance from a fund in court on the ground that he had no legal or equitable claim thereon, accepted an offer made in open court by counsel for opposing interests to consent to an allowance of a smaller sum, which allowance was accordingly made, based expressly on the consent, and who accepted payment thereunder, was thereby estopped to prosecute an appeal from the order disallowing his claim.

Appeal from the Circuit Court of the United States for the Western District of Michigan.

Russell C. Ostrander and Thomas H. Talbot, for appellant.
Horace G. Stone, for appellee.

Before LURTON and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This is an appeal from an order of the Circuit Court denying the petition of the appellant for an allowance of counsel fees payable out of the fund in court in the case of Mason et al. v. Pewabic Mining Company et al.

On March 31, 1884, Mason and others, minority stockholders of the Pewabic Mining Company, a Michigan corporation whose charter had expired in April, 1883, filed their bill in the Circuit Court for the Western District of Michigan against the company, its directors, and a new corporation called the Pewabic Copper Company, formed by the majority stockholders of the mining company for the purpose of acquiring its property, in which the complainants sought to prevent the proposed transfer and sale of the property of the mining company to the copper company, to obtain a public sale of such property, and an accounting by the directors of the mining company. The Circuit

Court decreed a sale, but denied an accounting. Mason v. Pewabic Mining Company (C. C.) 25 Fed. 882. The case was carried to the Supreme Court and the decree affirmed, except with respect to the accounting, as to which it was reversed and a reference to a master directed. Mason v. Pewabic Mining Company, 133 U. S. 50, 10 Sup. Ct. 224, 33 L. Ed. 524. Under this mandate the Circuit Court ordered a reference, report, and sale at public auction, and on February 3, 1891, the master filed his report of sale, which was confirmed. There was another appeal to the Supreme Court, and the decrees of the Circuit Court were, on May 16, 1892, in all respects affirmed. Pewabic Mining Company v. Mason, 145 U. S. 349, 12 Sup. Ct. 887, 36 L. Ed. 732.

On February 28, 1893, after affirmance by the Supreme Court of the decree confirming the sale of the property for $710,000, Dickinson & Russell, counsel for the complainants in the original suit, filed a petition for an allowance of $71,000 out of the amount realized on the sale, to which resistance was made and the petition denied, whereupon an appeal was prosecuted to the Supreme Court, which, on May 14, 1894, dismissed the appeal for lack of jurisdiction. Mason v. Pewabic Mining Company, 153 U. S. 361, 14 Sup. Ct. 847, 38 L. Ed. 745.

While the case was pending before the master, 17 claims against the fund arising from the sale of the property were presented for allowance, including, among others, a claim of Thomas H. Talbot for legal services rendered the mining company and its directors after the first appeal to the Supreme Court had been decided and a mandate sent down directing the reference to a master for an accounting. The firm of Dickinson, Thurber & Stevenson, representing the complainants in the original suit, successfully resisted the allowance of these claims by the master, and his report was sustained by the court. From this decree, nine of the complainants appealed to this court, which, on December 4, 1894, affirmed the decree with respect to all the claims except that of the Franklin Company, which was remanded for another reference. Mason v. Pewabic Mining Company, 66 Fed. 391, 13 C. C. A. 532.

With respect to the claim of Mr. Talbot, we said in that case (66 Fed. 398):

"Neither have we overlooked the further fact that the counsel for the complainants sought to have their compensation charged upon the fund, and that appellants, or some of them, actively resisted the claim thus asserted. It is the right of every beneficiary who is interested in the distribution of a common fund to contest each claim demanding participation. Each is interested in cutting down every other claim, that his own share may be thus enlarged. We do not understand that, for every contest thus made, the contestant establishes a charge upon the common fund. Self-interest is the motive for such defenses, and the resulting enlargement of his own share, in case of success, is the anticipated reward."

Subsequently, on February 21, 1896, the firm of Dickinson, Thurber & Stevenson filed its petition for an allowance of fees and expenses in successfully resisting the claims referred to, and on May 7, 1896, the Circuit Court allowed the petition, reciting that, although notice of the hearing had been served upon all parties adversely interested, no one had appeared except Thomas H. Talbot, of counsel for the Pewabic

Mining Company, Daniel L. Demmon, and Thomas H. Perkins, stockholders in said company, and that he had not opposed the granting of the petition. In other words, all parties having been notified of the application, and no one opposing it, the allowance was made as prayed for.

On February 8, 1902, the appellant, Thomas H. Talbot, filed his petition in the court below, asking for an allowance of $10,000 out of the fund in court, as equitable compensation for his services in successfully opposing the petition of Dickinson & Russell for $71,000 for professional services resulting in the sale of the property of the mining company for $710,000. In this petition the appellant set out that he was in 1887, and ever since has been, engaged as counsel for the minin~ company; that it devolved upon him to represent the mining company in the matter of the allowance or refusal of the petition of Dickinson & Russell; and, after examining the legal questions involved, he reached the conclusion that it ought not to be allowed. Accordingly, "with the concurrence and approval of the directors" of the mining company, of whom he was one, he determined to oppose the allowance of the compensation prayed for, and did so successfully. For this he asked an allowance of $10,000.

On May 21, 1902, the matter came on for hearing before the court below, and the following entry was made:

"This matter came on to be heard, and was argued by Russell C. Ostrander, counsel for the petitioner, and Horace G. Stone, counsel for all parties opposing said petition, and after mature deliberation the court announced its decision and judgment that the prayer of said petitioner should be denied and said petition dismissed, for the reason that the claim of said Thomas H. Talbot is not a legal or equitable claim against the fund from which recovery is sought; and thereupon counsel for the parties opposing said petition announced in open court that all of the parties to said cause interested in said fund and opposing said petition consent that an allowance of $1,000 be paid to said petitioner out of said fund; and thereupon, it is ordered, adjudged, and decreed that in compliance with said consent there be allowed out of the fund now in the custody of the court to the said Thomas H. Talbot, petitioner, the sum of $1,000."

On August 13, 1902, the following further order was made:

"An order having been duly entered in this cause on the 21st day of May, A. D. 1902, allowing the claim of Thomas H. Talbot in part, and directing the payment to him of the sum of $1,000 as the total amount allowed on said claim, on reading and filing the request of said Thomas H. Talbot to pay said sum to Russell C. Ostrander, it is ordered that there be paid to said Russell C. Ostrander out of the moneys now in the registry of this court in this cause the sum of one thousand dollars."

Acting under this order, on August 20, 1902, Mr. Ostrander received and receipted for the $1,000 allowed Mr. Talbot.

Thus it appears that Mr. Talbot's claim was argued by counsel for both sides, and the court, "after mature deliberation," announced its decision that the prayer be denied and the petition dismissed, for the reason that Mr. Talbot's claim was not a legal or equitable one against the fund in court. It further appears that, after the court had thus delivered its decision, the counsel for the parties opposing the petition announced in open court their consent that an allowance of $1,000 be paid to Mr. Talbot out of the fund, whereupon the court decreed that,

"in compliance with said consent," there be allowed Mr. Talbot the sum of $1,000. The subsequent order recites the allowance to Mr. Talbot of the sum of $1,000 "as the total amount allowed on said claim," and directs that it be paid to Mr. Ostrander at Mr. Talbot's request. This was accordingly done.

This is not the case of an appeal from a judgment allowing as of right part of a claim and denying the balance. If Mr. Talbot, by the deliberate judgment of the court and against resistance, had recovered a part of what he claimed, and had appealed from the part denied, those opposing might have appealed also, and thus the matter be brought before us in the shape in which it was presented to the lower court. This was not done. Mr. Talbot did not succeed in part. He was defeated altogether. Those opposing him were not defeated in part, so they could appeal. They were successful altogether. The judgment allowing him $1,000 was a consent judgment. It expressly states it was made "in compliance with said consent." It rested solely upon the agreement of the parties. The court was the mere medium of carrying this out, because the fund was in charge of the court. Mr. Talbot claimed $10,000 out of the fund. The court found he was entitled to nothing. After the matter had thus been disposed of, the opposing counsel announced they would consent that an allowance of $1,000 be made. This proposition, made in open court, was essentially similar to a like one made out of court. Whether made in court or out of court, such an offer is one to substitute the consent of the parties for the judgment of the court. If it had been made out of court, if the successful parties had said to Mr. Talbot, "You have been beaten in court, but we will pay you $1,000 for the services you rendered," and he had accepted the offer and taken the money, would he not have been estopped to prosecute his original claim further? The same result followed his acceptance of the offer made in court. The consent judgment was offered as a substitute, and, when accepted, took the place of the deliberate judgment. The petitioner had his choice between the two, but he could not take advantage of both. He could either take nothing under the first and prosecute his appeal, or $1,000 under the second and quit. He chose the second alternative, and the appeal must for this reason be dismissed, with costs.