CLAIRVIEW PARK IMPROVEMENT CO. OF GROSSE POINTE, LIMITED, *v.* DETROIT & LAKE ST. CLAIR RAILWAY.

APPEAL AND ERROR—JUDGMENTS—MOTION TO DISMISS—ESTOPPEL BY ENFORCEMENT.

> By the issuance of a writ of possession, by accepting the payment of costs, and by enforcing, by threats that the writ will be executed, a compliance with portions of a judgment in ejectment favorable to appellant after settling a bill of exceptions, an appellant precludes itself from reviewing the cause on error.

Error to Wayne; Donovan, J. Submitted October 27, 1910. (Docket No. 86.) Decided December 22, 1910. Rehearing denied April 1, 1911.

Ejectment by the Clairview Park Improvement Company of Grosse Pointe, Limited, against the Detroit & Lake St. Clair Railway and the Detroit United Railway. A judgment for plaintiff for a part of the premises claimed is reviewed by plaintiff on writ of error. On motion to dismiss, heard at the hearing on the merits. Writ of error dismissed.

*William M. Mertz*, for appellant.

*Gray & Gray*, for appellees.

STONE, J. This is an action in ejectment brought to recover possession of two strips of land, one occupied by defendant's tracks and ties, and the other by a wooden supporting wall known as the "bulkhead." Defendant's track runs upon Wier lane a distance of about 800 feet from the so-called boulevard in the rear, to Jefferson avenue in front, and clips the corner off the property just as it turns into and across Jefferson avenue; then continues northerly towards Mt. Clemens. The second strip is substantially 150 feet long and about 20 feet wide along the

shore of Lake St. Clair, extending northerly from the end
of Wier lane, parallel with Jefferson avenue, between de-
fendant's tracks and the lake.   In and upon this parcel
defendant has maintained spiles and a wooden supporting
wall known as the "bulkhead," and this last-named strip
of land is itself referred to in this record as the "bulk-
head."   The latter was intended to strengthen the support
of the track where it turns from Wier lane along the lake
front.   A blue print, in the record, shows the general
situation.

Upon the trial, only that portion of the property clipped
off where the track turns upon Jefferson avenue was by
the verdict of the jury awarded to the plaintiff.   As to
the Wier lane proper, the verdict was for the defendant,
and it omitted any finding as to the strip of land between
the track and the lake known as the "bulkhead."   How-
ever, the formal verdict, and judgment, as entered, show
a finding for defendant as to the "bulkhead" also.

The plaintiff tendered a bill of exceptions which it
claims was settled and signed April 26, 1910.   The printed
record does not contain the exact date of settlement.

The plaintiff caused a writ of error to be issued out of
this court on June 9, 1910.   No supersedeas bond was

filed. On June 8, 1910, the plaintiff caused a writ of possession and of execution to be issued out of the circuit court for the enforcement of the judgment in regard to the property awarded to it, and for the payment of costs. This writ was not actually delivered to the sheriff, but was held by the plaintiff's attorney.

As early as April 29, 1910, plaintiff's attorney wrote to defendant's attorneys calling their attention to the judgment, and asking the following question:

" Will the defendant move its tracks off of the corner of the turn of Wier lane and Jefferson, or will it be necessary for writ of restitution to issue?"

He also requested the payment of the taxed costs. On May 2, 1910, defendant's attorneys replied that they would confer with the defendant, and advise plaintiff's attorney.

As to the subsequent interviews and acts, there is some conflict, as shown by the affidavits on file. It appears, however, that on May 27, 1910, plaintiff's attorney again wrote defendant's attorneys relative to tracks and costs, and countercosts, and concluded as follows:

"As to tracks at corner, they are a nuisance and cut in entirely too far. Besides, on a new trial, I think I can show they are over boundary line of lane on premises proper, all the way down from boulevard. It is bad enough to have them there at all, let alone such encroachment. The company lets the lane grow up with weeds and brush, and so long as they monopolize the lane, pending outcome of suit, they should get off the corner and make sure the tracks are not outside lane all along."

Again, on June 6, 1910, plaintiff's attorney wrote defendant's attorneys as follows:

" I wrote you on April 29th regarding Clairview Park Imp. Co. vs. Railway, and received a letter in reply that you would let me know as to inquiry about payment of costs taxed, and also removal of tracks. I have heard nothing since, and wrote you over a week ago, to which I have no reply. I gave citations to Mr. Trowbridge over phone showing that the D. U. R. were not entitled to costs, and that the costs should be paid as taxed. He seems to

have misapprehended regarding the matter.   If I am to receive no reply from you definitely on my inquiry, I should at least be obliged for the courtesy of immediate information to that effect."

On June 17, 1910, defendant's attorneys sent a check for the taxed costs to the plaintiff's attorney.

On August 17, 1910, plaintiff's attorney wrote defendant's attorneys as follows:

" I am much disappointed at receiving no indication of the D. U. R. or the Detroit & Lake St. Clair Ry.'s making any move as to tracks at corner of Wier road on Jefferson.   Mr. Trowbridge will of course know how I have withheld the writ upon the company's promise to move, and also to see as to plan of movement.   I will have to let the sheriff act in this matter unless the company sees fit to act immediately.   I shall not consider that they intend to act unless it is given immediate consideration by them."

The tracks were moved on the corner on the night of September 21, 1910, but it is the claim of the plaintiff that they were not wholly removed from the corner of Wier lane and Jefferson, but that they still remain outside of Wier lane on said corner, and that said tracks still encroach on said corner for which plaintiff had judgment.

On September 30, 1910, defendant's attorneys entered a motion in this court to dismiss the writ of error, and all proceedings thereunder, for the reason that the plaintiff appellant has exercised its rights under the judgment below in such a way as to estop it from questioning the same, or further to seek its reversal.   This motion was held until the hearing of the case, and should first be disposed of.   Counsel have at some length presented arguments and authorities upon the question whether the same rule should apply in an action of ejectment, where there has been a partial recovery, as where the appealing party has obtained satisfaction of judgment in other actions. Counsel seem to agree, however, that, if the state of the case is such that the contention cannot be otherwise than speculative, and no rights of the parties can be changed

in point of law, it is not incumbent on this court to formulate an opinion, where the plaintiff could have no legal interest in the result.

The plaintiff contends that the judgment is not in accord with its just rights, and that its recovery was for a small part, only, of the premises involved, and that almost the whole of Wier lane in front of the boulevard, and the "bulkhead," remain in dispute, and that it seeks judgment for the entire property described in the declaration; and it claims that it was the understanding between the parties and their counsel that what was done by way of payment of costs, and getting possession of the small part recovered by the judgment, was to be without prejudice to its rights upon appeal. It also claims that the writ of possession was not executed, that it was issued at the suggestion of defendant's counsel, and that a copy of the writ was given to them by arrangement; and finally it is urged that the entire premises recovered have not been surrendered or vacated.

It does appear that while the plaintiff was prosecuting a writ of error for the purpose of reviewing this judgment, it enforced the judgment on the parts thereof which passed in its favor, namely, as to the corner, or a part thereof, and as to costs. It also clearly appears that this was brought about by its repeated statements that if the track was not moved and the taxed costs paid, the same would be enforced by the writ then in possession of its attorney. The motion to dismiss the writ of error is based upon the proposition that a party cannot, while availing himself of the judgment, so far as it passed in his favor, seek its reversal. Either party to a judgment in ejectment may of right demand a statutory new trial. There is here but one judgment. If it were to be reversed at all, it must be reversed in its entirety. If the judgment should be reversed, it would follow that it would be only under an invalid judgment that the defendant had been compelled to move its tracks.

It should be borne in mind that no part of the plaintiff's

claim was admitted by the defendant, but the entire claim was denied and contested. It is an established rule of procedure that a party to an action cannot receive a benefit under a judgment, and then appeal from it, when the effect of his appeal may be to annul the judgment, unless his right to the benefit is absolute, and cannot possibly be affected by a reversal of the judgment. *Easton* v. *Lockhart* (N. D.), 89 N. W. 75. The earlier case of *Tyler* v. *Shea*, 4 N. D. 377 (61 N. W. 468, 50 Am. St. Rep. 660), is referred to by Chief Justice Wallin in the above case.

As *Tyler* v. *Shea* is cited by plaintiff's attorney, the following excerpt therefrom is quoted. After stating the rule as above, and citing many authorities in support thereof, the court says:

" We must be careful not to ignore an important qualification of the general doctrine. Where the reversal of the judgment cannot possibly affect the appellant's right to the benefit he has secured under the judgment, then an appeal may be taken, and will be sustained, despite the fact that the appellant has sought and secured such benefit. To illustrate this doctrine, we may instance the case of an action to recover $1,000, in which the only defense is a counterclaim for $500. It is obvious that $500 of plaintiff's claim is admitted. If the defendant succeeds in establishing his counterclaim, thus reducing the plaintiff's recovery to $500, the plaintiff may collect the $500 awarded to him by the judgment, and still appeal from such judgment to secure a reversal, to the end that he may defeat the counterclaim and recover judgment for his entire demand on a new trial. The $500 he is entitled to absolutely. The reversal of the judgment and the second trial of the case cannot impair his right to it. Accepting this sum is therefore not inconsistent with his attempt to reverse the judgment, that he may on a new trial recover more. He can never recover less. It is the possibility that his appeal may lead to a result showing that he was not entitled to what he has received under the judgment appealed from, that defeats his right to appeal. Where there is no such possibility, the right to appeal is unimpaired by the acceptance of benefits under the judgment appealed from. The following decisions enforce this doctrine: *Reynes* v. *Dumont*, 130 U. S. 354–394 (9 Sup. Ct. 486); *Embry* v.

*Palmer,* 107 U. S. 3 (2 Sup. Ct. 25); *Higbie* v. *West-lake,* 14 N. Y. 281; *Mellen* v. *Mellen,* 137 N. Y. 606 (33 N. E. 545); *Cocks* v. *Haviland,* 55 Hun, 605 (7 N. Y. Supp. 870); *Portland Construction Co.* v. *O'Neil,* 24 Or. 54 (32 Pac. 764); *Morriss* v. *Garland,* 78 Va. 215; *Upton Manfg. Co.* v. *Huiske,* 69 Iowa, 557 (29 N. W. 621); *Dudman* v. *Earl,* 49 Iowa, 37. The case of *U. S.* v. *Dashiel,* 3 Wall. 688, belongs to this class. The reasoning of the opinion delivered in denying the motion to dismiss is unsatisfactory in its statement of the grounds on which the decision rests, but, when we turn to the opinion of the court on the merits ([*U. S.* v. *Dashiel*] 4 Wall. 182), we discover that the defendant did not dispute his liability for the amount for which judgment was rendered against him, but only with respect to the balance of the claim; his defense as to such balance being that the money was stolen from him, and that, therefore, he was not accountable for it to the government, whose money it was, in his custody as paymaster in the army of the United States. The judgment was rendered for this amount not in dispute, and a portion of it was collected before the writ of error was sued out. The motion to dismiss was properly denied, because the reversal of the case could not affect plaintiff's right to what it had collected. Defendant conceded that so much was due. Again, cases will arise—they have arisen—in which the appellant has the right to ask for a more favorable judgment in the appellate court without having the case sent back for a new trial, on which, of course, the whole matter would be open again for investigation, which might result in a judgment not so favorable to plaintiff, or even one that would be adverse to him. In the class of cases in which a new trial of the whole case may result from the appeal, the element does not exist that exists in the one we have already alluded to. No portion of plaintiff's claim is admitted. Everything is in controversy. Under such a state of the pleadings, it is obvious that a reversal of the judgment and a new trial may result in a decision showing that the plaintiff was not entitled to what the former judgment gave him. In such a case the plaintiff cannot accept what that judgment gives him, and then by appeal pursue a course which may overthrow the right of which he has availed himself. But if it is possible for him to obtain a more favorable judgment in the appellate court without the risk of a less favorable judgment from a new

trial of the whole case there or in the lower court, then the acceptance of what the judgment gives him is not inconsistent with an appeal for the sole purpose of securing, without retrial of the whole case, a decision more advantageous to himself. There are several cases in which this doctrine has been enforced, and others in which it has been recognized. *Monnet* v. *Merz*, 60 N. Y. Super. Ct. 256 (17 N. Y. Supp. 380), affirmed in 131 N. Y. 646 (30 N. E. 866); *Clowes* v. *Dickenson*, 8 Cow. (N. Y.) 328, as explained in *Knapp* v. *Brown*, 45 N. Y. 208; *Tarleton* v. *Goldthwaite*, ·23 Ala. 346 (58 Am. Dec. 296); *Inverarity* v. *Stowell*, 10 Or. 261.''

The case of *Raborn* v. *Woods*, 33 Ind. App. 171 ( 70 N. E. 399 ), is in point. It was ejectment for 80 acres of land. The judgment was in favor of the plaintiff for the east one-half of the 80, and in favor of the defendants for the west one-half. The plaintiff and appellant took possession of the 40 acres awarded to him and exercised all acts of ownership over the same. The court said:

'' It appears in this case that appellant has elected to receive the benefit of what he is alleging is an erroneous judgment and decree of the court. He has taken possession of the land awarded to him by the judgment, and is receiving the rents and profits therefrom, and is here seeking a reversal of the decree as to the other part of the land, which by the judgment of the court, was given to appellees. This he cannot do. A reversal of the judgment under the assignment of error could only result in a new trial of the whole case. The parties to the action could not be placed in the same position that they occupied at the time the action was commenced, because it is alleged, and is not denied, that appellant accepted the benefit of the judgment and decree, and is in possession of a part of the real estate. * * * We think the case falls fully within the rule that a party cannot accept any benefit of an adjudication and afterwards allege it to be erroneous.''

See, also, *Sterne* v. *Vert*, 108 Ind. 232 (9 N. E. 127); *Moore* v. *Williams*, 132 Ill. 594 (24 N. E. 617); *Smith* v. *Coleman*, 77 Wis. 343 (46 N. W. 664); *Laird* v. *Giffin*, 84 Wis. 286 (54 N. W. 584); *Rariden* v. *Rari-*

*den,* 33 Ind. App. 284 (70 N. E. 398, 104 Am. St. Rep. 252); *Chase* v. *Driver,* 92 Fed. 780, 34 C. C. A. 668. Many more cases might be cited to the same effect. Counsel for the plaintiff seeks to distinguish some of these cases from the instant case by reason of the statute, but we are unable to distinguish them.

In *Talbot* v. *Mason,* 125 Fed. 101, 60 C. C. A. 145, it was held that a claimant who, on the entry of an order denying his petition for an allowance from a fund in court on the ground that he had no legal or equitable claim thereon, accepted an offer made in open court by counsel for opposing interests to consent to an. allowance of a smaller sum, which allowance was accordingly made, based expressly on the consent, and who accepted payment thereunder, was thereby equitably estopped to prosecute an appeal from the order disallowing his claim. We might cite many cases holding that one who accepts the benefits of a decree or judgment, is thereby estopped from reviewing it, or from escaping from its burdens.

It will be noted that this writ of error seeks a reversal of the entire judgment. Should the case be reversed, the judgment below would no longer exist for any purpose.

While there is some disagreement as to the conduct of the plaintiff in seeking the benefits of its judgment, the essential facts are not disputed, that the plaintiff sought the benefit of its judgment by asserting its right under the writ of possession and execution, and is thereby, we think, precluded from prosecuting its appeal.

It is equally undisputed that the defendant at first declined to submit to the demands of the plaintiff, and it was only when threatened with service of process, that the tracks were moved. The motion to dismiss the writ of error was made within 10 days after the tracks were moved. We do not think that defendant was guilty of any laches here. Nor do we find that defendant by its conduct misled the plaintiff. The plaintiff from the first persisted in its course. The parties were adversaries in a

lawsuit, and dealt with each other at arm's length. At most, the defendant stood upon its rights.

We think that the motion to dismiss the writ of error should be granted.    Motion granted.

BIRD, C. J., and OSTRANDER, HOOKER, and MOORE, JJ., concurred.